UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | CASE NO. 10-40219 |
| EDWARD MANDEL, | § | |
| | § | (Chapter 11) |
| Debtor. | § | |

**FIRST INTERIM APPLICATION OF MUNSCH HARDT KOPF & HARR, P.C.
FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES
<u>FOR SERVICES AS CO-COUNSEL TO DEBTOR-IN-POSSESSION</u>**

**NO HEARING WILL BE CONDUCTED ON THIS MOTION / OBJECTION / APPLICATION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN TWENTY-ONE (21) DAYS FROM DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER**.

TO THE HONORABLE BRENDA T. RHOADES, U.S. BANKRUPTCY JUDGE:

COMES NOW Munsch Hardt Kopf & Harr, P.C. ("<u>Munsch Hardt</u>"), co-counsel to Edward Mandel (the "<u>Debtor</u>"), the debtor and debtor-in-possession in the above styled and numbered Chapter 11 bankruptcy case (the "<u>Bankruptcy Case</u>"), and files this its *First Interim Application for Allowance of Fees and Reimbursement of Expenses for Services as Co-Counsel to Debtor-In-Possession* (the "<u>Application</u>"), respectfully stating as follows:

I. **SUMMARY**

1. The following is a summary of the fees and expenses Munsch Hardt requests the interim approval of, and an interim award for, through this Application:

| Role in Case | Co-Counsel to Debtor-In-Possession |
|---|---|
| Court Approved Date of Retention | February 23, 2010 |
| Date Range | February 23, 2010 through July 16, 2010 |
| Total Fees During Period | $43,796.00 |
| Total Expenses During Period | $2,308.94 |
| Highest Hourly Rate | $330.00 |
| Blended Hourly Rate | $312.60 |
| Principal Attorney | Davor Rukavina (112.7 hours, $330 per hour rate) |
| Prepetition Retainer | $10,000 |
| Amount of Retainer Remaining | $10,000 |

## II.   PROCEDURAL BACKGROUND

2.   On January 25, 2010 (the "Petition Date"), the Debtor filed his voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), thereby initiating the Bankruptcy Case and creating his bankruptcy estate (the "Estate").

3.   The Debtor remains in possession of the Estate as a debtor-in-possession. No committee, trustee, or examiner has been appointed in the Bankruptcy Case.

4.   The Court has jurisdiction over this Application under 28 U.S.C. § 1334. Such jurisdiction is core under 28 U.S.C. §§ 157(b)(2)(B) and (O). Venue of this Application before this Court is appropriate under 28 U.S.C. §§ 1408 and 1409.

## III.   RETENTION OF MUNSCH HARDT

5.   Shortly after the Petition Date, and given the pendency of the so-called "White Nile Litigation," the Debtor believed it appropriate to retain co-general counsel in light of: (i) a potential conflict concerning Mark Ralston, Esq., the Debtor's co-general counsel, related to his prior involvement with White Nile; and (ii) the anticipated need for litigation of various White Nile Litigation issues which would consume counsel time at a time when the Debtor desired to focus on the Bankruptcy Case and his anticipated plan of reorganization. Accordingly, the Debtor approached Munsch Hardt, and specifically Davor Rukavina of Munsch Hardt, to provide

these services in the Bankruptcy Case and in any related case, as co-general counsel, while the other co-general counsel focused on pure bankruptcy aspects of the Bankruptcy Case. Munsch Hardt agreed to provide these services and promptly became involved in the Bankruptcy Case.

6. On March 11, 2010, the Debtor filed his *Debtor's Application to Employ Munsch Hardt Kopf & Harr, P.C. as Co-Counsel to the Debtor* [docket number 59], attached to which was the *Affidavit of Rukavina*, containing the statements required by Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure.

7. On March 29, 2010, the Court entered its *Order Authorizing Debtor to Retain Munsch Hardt Kopf & Harr, P.C. as Co-Counsel to the Debtor* [docket no. 72], a true and correct copy of which is attached hereto as Exhibit "A". Said order provides, among other things, that "Munsch Hardt shall be compensated pursuant to interim and final fee applications and sections 330 and 331 of the Bankruptcy Code, as otherwise appropriate."

8. Additionally, said order authorized Ciardi Ciardi & Astin, whose application for retention by the Debtor was subsequently denied by the Court, to transfer to Munsch Hardt $10,000 of the retainer the Debtor had provided to it, for Munsch Hardt to then hold as a retainer. Ciardi Ciardi & Astin transferred said $10,000 to Munsch Hardt, which amount Munsch Hardt continues to hold in trust as a retainer pending further order of the Court.

9. Subsequently, the Debtor retained the firm of Franklin Skierski Lovall Hayward, LLP ("<u>FSLH</u>") as co-general counsel. The Debtor, Munsch Hardt, and FSLH worked closely to coordinate efforts, allocate work, and minimize overlap and fees, with FSLH taking the primary role with respect to the conduct of the Bankruptcy Case and the Debtor's plan, and with Munsch Hardt taking the primary role in matters concerning the White Nile Litigation.

## IV. THE REQUESTED FEES AND EXPENSES

10. Attached hereto as Exhibit "B" and incorporated herein is Munsch Hardt's invoice to the Debtor, for services and expenses between February 23, 2010 and July 16, 2010 (the "Subject Period") (the Court's order approving the retention of Munsch Hardt approved such retention as of February 23, 2010). As detailed in said exhibit, during the Subject Period Munsch Hardt incurred fees in the amount of $43,796.00 (the "Requested Fees"), and expenses n the amount of $2,308.94 (the "Requested Expenses").

11. The Requested Fees and Requested Expenses all relate to Munsch Hardt's services to the Debtor and to the Estate regarding the White Nile Litigation, including in those proceedings where that litigation "spilled over" into the Bankruptcy Case. The following is a summary of the tasks used by Munsch Hardt, and of the services provided to the Debtor encompassing the Requested Fees and Requested Expenses.

### A. RETENTION AND APPLICATION – Task 1 ($957.00)

12. The Requested Fees include $957.00 related to the preparation and filing of Munsch Hardt's application for retention by the Debtor, the related affidavit and Rule 2014 and Rule 2016 statement, and the proposed order on the same. These fees also include a conference concerning the allocation of work and responsibility between Munsch Hardt and co-general counsel. At approximately two percent of the Requested Fees, Munsch Hardt submits that these fees are well within the range of reasonableness.

### B. LIFT STAY MATTERS – Task 2 ($8,170.50)

13. Various of the litigants from the White Nile Litigation; specifically the Receiver, Jason Coleman, and Steven Thrasher, filed motions for relief from the automatic stay in order to permit the White Nile Litigation to continue. Given that these motions were filed early in the

Bankruptcy Case, it was critical that the Debtor defeat these motions so that he could focus on his finances, reorganization, and bankruptcy plan, for the benefit of all creditors. Accordingly, Munsch Hardt prepared detailed objections to the two (2) lift stay motions, and defended the Debtor in the process.

14. These services included discovery related to the lift stay motions, and participating in at least one preliminary hearing on the motions. They also included strategy meetings with the Debtor and various negotiations with other parties to the Bankruptcy Case. As the lift stay motions became joined with the motions to remand the White Nile Litigation, most of Munsch Hardt's time related to the lift stay motions thereafter was billed under the task allocated to the White Nile Adversary Proceeding.

15. The Estate benefited from these services. Among other things, Munsch Hardt successfully defended the motions for relief from stay and the Court denied the same, while the Debtor was able to devote several months to his finances, reorganization, and bankruptcy plan without the constant burdens of sizable and aggressive litigation. Moreover, Munsch Hardt's services in this respect were defensive, and there was little the Debtor or Munsch Hardt could do except to participate in the lift stay process, meaning that incurring these fees was largely outside the Debtor's and Munsch Hardt's control.

C. **WHITE NILE ADVERSARY PROCEEDING** – Task 3 ($15,328.00)

16. The Requested Fees include approximately $15,328.00 for services related to the White Nile Adversary Proceeding. Specifically, as the Court knows, prior to the Petition Date the Debtor was embroiled in extensive, contentious, and expensive litigation, involving multiple parties. In many ways, that litigation (the White Nile Litigation) led to the Debtor's bankruptcy, and in many ways those proceedings drove the Bankruptcy Case.

17. During the Subject Period, Munsch Hardt: (i) assessed the White Nile Litigation and prepared and provided its strategy to the Debtor; (ii) removed the White Nile Litigation to the United States Bankruptcy Court for the Northern District of Texas; (iii) transferred the White Nile Litigation from that court to this Court, where it has been assigned Adversary Proceeding No. 10-04133 (the "White Nile Adversary Proceeding"); (iv) prepared objections to the Receiver's, Jason Coleman's, and Steven Thrasher's motions to remand and abstain in the White Nile Adversary Proceeding; (v) prepared for the hearings thereon, successfully defeating the motions to remand and abstain; (vi) prepared and successfully prosecuted a motion to quash portions of the Debtor's deposition; and (vii) prepared and filed objections to the proofs of claim filed by the Receiver, Coleman, and Thrasher.

18. Ultimately, the Court retained the White Nile Adversary Proceeding and denied the motions to remand and abstain. Therefore, Munsch Hardt submits that its services in connection therewith were beneficial to the Estate, especially because litigating the White Nile Adversary Proceeding before this Court will be more efficient and will spare the Estate the costs and delays that would otherwise be incurred.

D. **TRUSTEE MOTION – Task 4 ($19,340.50)**

19. The Requested Fees include approximately $19,340.50 in fees related to successfully defending the Debtor against motions for the appointment of a Chapter 11 trustee filed by the Receiver, Jason Coleman, and Steven Thrasher – all adversaries of the Debtor in the White Nile Adversary Proceeding.

20. During the Subject Period, Munsch Hardt: (i) finalized the Debtor's objections to said motions, although FSLH took the lead role and laboring oar on the objections; (ii) assisted the Debtor with assembling and producing substantial amounts of documents pursuant to

discovery requests and subpoenas to the Debtor and to various companies affiliated with the Debtor; (iii) participated in protective order proceedings before this Court initiated by several of those affiliated companies; (iv) defended the Debtor at his deposition on the trustee motions; (v) assisted FSLH with negotiating a proposed (and as yet not final or approved) settlement which would remove the Receiver from the Bankruptcy Case and the White Nile Adversary Proceeding; and (vi) prepared for and successfully defended the Debtor at the hearings on the trustee motions.

21. Ultimately, in denying the trustee motions, the Court actually or implicitly found that the Debtor retaining in possession of the Estate was in the Estate's best interests. The Debtor retaining in possession of the Estate has and will continue to provide great benefit to the Estate, since valuable property of the Estate would likely become much less valuable, or worthless, in the event a trustee was appointed. Therefore, these services conferred actual and necessary benefits on the Estate.

## V. DISCUSSION

### A. STANDARDS FOR ALLOWANCE OF FEES AND EXPENSES

22. Under section 330 of the Bankruptcy Code, a bankruptcy court may allow reasonable compensation for actual, necessary professional services rendered by a professional in the case, determining the reasonableness of the compensation requested based upon the nature, extent and value of such services to the estate. Similarly, a bankruptcy court may allow the reimbursement of actual, necessary expenses incurred by a professional in connection with the rendition of services. Specifically, section 330 provides in pertinent part:

>  (a)(1)  the court may award to … a professional person employed under section 327 … –

(A) reasonable compensation for actual, necessary services rendered by the … professional person, or attorney and by any paraprofessional person employed by any such person;

(B) reimbursement for actual, necessary expenses.

…

(3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(1) & (3) (2004).

23. The Fifth Circuit has held that the five factors set out in section 330(a)(3) of the Bankruptcy Code are the most relevant to fee determinations in bankruptcy cases. *See, e.g., Peele v. Cunningham (In re Texas Securities, Inc.)*, 218 F.3d 443, 445 (5th Cir. 2000). Of additional relevance are the twelve factors set forth by the Fifth Circuit in the seminal case of *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714 (5th Cir. 1974).

**B. APPLICATION OF FACTORS**

**1. Time Spent on Services**

24. Munsch Hardt submits that the time it spent on the services represented by the Requested Fees was more than reasonable. For example, Munsch Hardt avoided, as much as

possible, preparing more extensive pleadings and briefings than was necessary. Munsch Hardt coordinated closely with the Debtor's co-general counsel to ensure efficiency and to minimize any duplication of efforts. Where possible, Munsch Hardt sought agreements and compromises with various creditors and other parties to minimize potential litigation. Only one attorney from Munsch Hardt participated in hearings. Moreover, it is important to note that much of Munsch Hardt's services were rendered in response to the motions and actions of other pleadings, thereby necessitating the provision of these services. Finally, Munsch Hardt avoided the services of associates where possible, and focused on one more senior attorney providing more efficient services.

2. **Rates Charged**

25. The bulk of the Requested Fees (approximately 85%) are for services provided by Davor Rukavina, a shareholder of Munsch Hardt, at the rate of $330 per hour. This is a reduced rate, reduced from his standard rate of $350 per hour. Munsch Hardt submits that each of its hourly rates is reasonable, as measured by: (i) the experience level of each of the professionals; (ii) the skills and responsibilities of each of the professionals; (iii) the tasks undertaken by the professionals; and (iv) the average hourly rates of similarly experienced and situated attorneys in the North Texas market. In fact, Munsch Hardt submits that the hourly rates for its attorneys are considerably lower than those of other comparable attorneys and law firms in the market, and are considerably lower than other rates that this Court has approved in comparable bankruptcy cases.

3. **Services Were Necessary and Beneficial**

26. The services represented by the Requested Fees were necessary and beneficial to the Debtor, his Estate, and its creditors. Munsch Hardt notes that, among other things, the Debtor prevailed on each proceeding before this Court in which Munsch Hardt represented the

Debtor. In ruling on these matters in favor of the Debtor, the Court necessarily found that Munsch Hardt's services were necessary and beneficial. Among other things, the Court denied the trustee motions, denied the lift stay motions, denied the remand motions, and granted the Debtor's motion for deposition protective order. The Court would not have ruled in favor of the Debtor on these matters if the Debtor had not been correct, meaning that Munsch Hardt's services protected and preserved the Estate.

### 4. **Munsch Hardt's Services Were Performed Within a Reasonable Amount of Time**

27. Munsch Hardt made judicious use of its time and did not spend unnecessary time on routine matters. For example, at no hearing was more than one attorney from Munsch Hardt present. Munsch Hardt staffed this representation with attorneys senior enough to handle matters on their own, and without the need for more junior attorneys to provide assistance on most matters, while still using more junior attorneys with lower billing rates for discrete matters and projects. Hence, inherent inefficiencies when using multiple attorneys substantially on the same matter were avoided and minimized.

### 5. **The Fees and Expenses are Comparably Reasonable**

28. Munsch Hardt submits that its hourly fee structure is extremely competitive in relation to the fees charged by other experienced bankruptcy practitioners and paraprofessionals regionally, and that the amount of fees being requested by Munsch Hardt is within the range of fees customarily approved by bankruptcy courts in cases of similar size and complexity, as evidenced by the blended rate during the Subject Period of approximately $312 per hour.

### C. PAYMENT OF FEES AND EXPENSES ON INTERIM BASIS

29. Section 331 of the Bankruptcy Code provides that:

> a debtor's attorney, or any professional person employed under section 327 or 1103 of this title, may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may <u>allow</u> and <u>disburse</u> to the applicant compensation or reimbursement.

11 U.S.C. § 331 (2004) (emphasis added). As explained by the Fifth Circuit, "[t]he Bankruptcy Code specifically provides for the award of interim compensation. The purpose of interim compensation is to alleviate economic hardships that would otherwise visit court appointed officers committed to finance extended engagements." *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Wooten (In the Matter of Evangeline Ref. Co.)*, 890 F.2d 1312, 1321 (5th Cir. 1989).

30. Since this Application requests the allowance of fees and expenses on an interim basis only, Munsch Hardt is not seeking the immediate payment in full of any fees and expenses allowed by the Court. Rather, Munsch Hardt requests that the Debtor pay to Munsch Hardt 80% of the Requested Fees that are allowed, and 100% of the Requested Expenses that are allowed, subject to final allowance, and without prejudice to seeking the balance of such fees at a later date.

## VI. <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Munsch Hardt respectfully requests that the Court enter an order: (i) approving this Application; (ii) allowing, on an interim basis, the Requested Fees and the Requested Expenses; (iii) authorizing the payment, on an interim basis, to Munsch Hardt on account of such fees and expenses of $37,345.74, subject to final allowance and without prejudice to seeking the full payment of all fees and expenses; and (iv) granting Munsch Hardt such other and further relief to which it may show itself to be justly entitled.

RESPECTFULLY SUBMITTED this 3d day of August, 2010.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    3800 Lincoln Plaza
    500 North Akard
    Dallas, Texas 75201
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584

**ATTORNEYS FOR THE DEBTOR-IN-POSSESSION**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 3d day of August, 2010, true and correct copies of this Application were electronically served by the Court's ECF system on parties entitled to notice thereof, including the Debtor, Debtor's counsel, and the US Trustee, and that, additionally, on the same date he caused true and correct copies of this Application, with all exhibits thereto, to be served by U.S. first class mail, postage prepaid, on the parties listed on the Service List attached immediately below.

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.